UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

UNITED STATES OF AMERICA,       )
                                )
v.                              )         Case No. 1:12-cr-34
                                )         *Collier/Carter*
ROBBIE TAYLOR BELL              )


REPORT AND RECOMMENDATION

I. Introduction

Defendant's motion to suppress [Doc. 28] is before the undersigned having been referred

for a report and recommendation by the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and

(C). Bell, who is charged with being a felon in possession of ammunition in violation of 18

U.S.C. § 922(g)(1), contends ammunition found in an apartment leased by his girlfriend from the

Chattanooga Housing Authority should be suppressed as evidence against him because police

entered the apartment in violation of his Fourth Amendment rights. Bell also seeks suppression

of statements he made to police concerning this ammunition on the ground that his statements

were coerced in a manner which violated his Fifth Amendment rights. The undersigned finds

Bell had no reasonable expectation of privacy in the apartment where the ammunition was found

and that he voluntarily and knowingly waived his Fifth Amendment rights when he gave his

statements regarding the ammunition. Accordingly, it is RECOMMENDED defendant's motion

to suppress be DENIED.

II. Relevant Facts

An evidentiary hearing was held on defendant's motion to suppress on March 14, 2013.

The following information is derived from that hearing:

On October 19, 2011, at about 1 a.m., in response to numerous complaints made to Chattanooga Housing Authority (CHA), CHA Police Officers Ian Galyon and James Avery went to an apartment leased by Kenyasha Leverett at CHA's College Hill Courts housing project. According to the complaints, Ms. Leverett's boyfriend, defendant Bell, was present at her apartment even though he was on CHA's "no trespassing" list. Galyon and Avery, who were in separate vehicles, were dispatched to investigate.

The no trespassing list is comprised of individuals who are known gang members and/or have been convicted of certain misdemeanors or felonies. Defendant is both a known gang member and has been convicted of a felony. Persons who are on the no trespassing list are prohibited by CHA from entering any CHA properties for a designated period of time. All persons on the list are given written notice that he or she has been placed on the list, and there is an appeals process if a person wants to challenge being placed on the list. CHA police can give citations or make arrests for trespassing onto CHA property. It is undisputed that Bell was on the no trespassing list on October 19, 2011, and that prior to October 19, 2011, he had been cited at least once for trespassing on CHA property.

When Galyon arrived at Leverett's apartment on October 19, 2011, he went to the front door. Defendant and a second man, later identified as the husband of defendant's niece who was also visiting Kenyasha Leverett, were in the apartment. Gaylon told them he needed to speak with them, and they came outside. Gaylon recognized the defendant from previous encounters with him and knew he was a gang member. At this point, Gaylon was by himself, it was late and dark outside, he was in an area known for gang activity, and one of the two men he was talking with was a known gang member. He handcuffed defendant and the second man for officer

2

safety.  Gaylon testified he had not decided at this point whether to arrest defendant or just cite him for trespassing.

Officer Avery testified he arrived in a separate car and went to the back of the apartment. He then walked around to the front where he saw Kenyasha Leverett standing in the doorway, and he asked to speak with her.  While Leverett was inside the apartment, Gaylon remained outside with the defendant and the second man.  Gaylon was soon joined by at least six officers from the Chattanooga Police Department.  Gaylon was wearing a small camera with audio on his shirt lapel.

While the audio and video is not very clear, it does capture the essence of what occurred for the next twenty-five minutes or so outside the apartment.  Defendant and the second man were questioned outside by police.  The conversation was in normal voices; no one shouted.  No guns were drawn.  There was no physical interaction between police and the two men they were questioning.  Police  talked with defendant about the fact that he was on the no trespassing list, that he had been cited for trespassing before, and that CHA was receiving complaints about him trespassing.  When asked if he was living at the apartment with Kenyasha, he denied it and stated he was living in a motel on Broad Street with his sister.  He stated he had come to see his little girl, and he was paying the cable bill at the apartment so that she could watch cable TV.  There was also discussion about his being in a gang which he admitted.  No questions were asked about guns or ammunition at this time.  A significant amount of time, 10 to 15 minutes, was spent questioning the second man in an attempt to learn his identity; he gave an identity which officers eventually were able to determine was false.

While Gaylon was questioning defendant and the second man, Avery was inside the apartment talking to Kenyasha Leverett.  There is some dispute about how Avery entered the

3

apartment. According to defendant's adult niece who was present at the apartment that evening, Avery entered uninvited through the kitchen back door. According to Avery, when he walked around from the back of the apartment to the front, he saw Kenyasha standing at the front door and he asked her if he could come inside to speak with her. Avery testified she agreed, they walked into the living room, and then he asked her to go to the kitchen to talk. In the kitchen, they discussed the fact that defendant was on the no trespassing list and that complaints had been made that defendant was at the apartment. Avery testified there had been so many complaints to CHA about defendant being at Kenyasha's apartment that CHA had previously required Leverett to sign a letter of understanding indicating she knew defendant was not allowed on the premises. During his conversation with Leverett on October 19, 2011, Avery also told Leverett that defendant's presence could be dangerous for her daughter since the defendant was a member of a gang and gangs often were involved in violence.

Avery and Leverett talked for about ten minutes in the kitchen. When the conversation was over, Avery turned around and saw in plain view on the kitchen counter a couple of boxes of ammunition. Avery testified he asked Leverett who the boxes belonged to and she told him, "They are Robert's," which Avery understood to mean the defendant's. Avery also testified that Leverett told him someone had brought them to defendant. During the suppression hearing, Leverett denied she told Avery the boxes of ammunition were Robert's. Rather, she testified she told Avery a homeless man that she feeds in exchange for his doing chores must have left them on the counter.

After talking with Leverett in the kitchen, Avery went outside to talk with defendant. Galyon was present and captured the exchange on his lapel camera. Avery gave defendant his *Miranda* warnings and asked defendant if he understood them. Defendant said yes. Avery asked

defendant if he would talk to him and defendant said he would.  Avery told defendant that

Avery's chief wanted Avery to arrest defendant for trespassing. Avery asked defendant if he was

a convicted felon and defendant said yes.  Avery asked defendant how long he had been in a

gang and defendant said nineteen years.  Avery showed him the boxes of bullets and asked him

about them.  Defendant indicated that they were his, that a friend had brought them to him, and

that he sold them for $5.00 per box.  This entire exchange is captured on video and audio, and it

reveals a polite, low key conversation between Avery and defendant.  Defendant was not under

duress, he was not upset.  He appeared to understand his rights and the questions being asked of

him.  He agreed to answer the questions with no hesitation.  After this conversation ended, the

defendant was arrested for trespassing.  He was not arrested for illegally possessing ammunition

at that time.

### III. Analysis

Defendant argues the boxes of ammunition should be suppressed because police entered

the apartment in violation of the Fourth Amendment.  Defendant also seeks to suppress his

statements made on October 19, 2011 on the ground that they were obtained in violation of his

Fifth Amendment rights.

*A. The Boxes of Ammunition – Fourth Amendment Issues*

Defendant's argument, succinctly put, is that Avery had no constitutional right to be in

the apartment where he discovered the boxes of ammunition, and thus, this evidence must be

suppressed as being obtained in violation of the Fourth Amendment.

"'It is well-established that a defendant claiming that a search violated his Fourth

Amendment rights has the burden of demonstrating that he had a legitimate expectation of

privacy in the place that was searched.'" *United States v. Mastromatteo*, 538 F.3d 535, 544 (6th

Cir. 2008) (quoting *United States v. Talley*, 275 F.3d 560, 563 (6th Cir.2001)). Absent a

legitimate expectation of privacy in the premises searched, the Fourth Amendment offers no

protections to the defendant against police intrusions into the premises searched. *See United

States v. Hunyady* , 409 F.3d 297, 300 (6th Cir. 2005) (the "capacity to claim the protection of

the Fourth Amendment depends upon whether the person who claims the protection of the

Amendment has a legitimate expectation of privacy in the invaded place.") (quoting *Rakas v.

Illinois* , 439 U.S. 128, 143 (1978)).

When considering whether a defendant has met his burden to establish that he had a

legitimate expectation of privacy in the place searched, a court must conduct a two part analysis.

First, the court must ask "whether the individual, by his conduct, has exhibited an actual

expectation of privacy; that is, whether he has shown that he sought to preserve something as

private." *Bond v. United States*, 529 U.S. 334, 338 (2000) (internal citation omitted); *United

States v. Fitzgerald*, 499 F.3d 596, 601 (6th Cir. 2007) ("In order to be afforded protection under

the Fourth Amendment, a person must exhibit a subjective expectation of privacy...."); *accord,

United States v. Waller*, 426 F.3d 838, 844 (6th Cir. 2005); *United States v. King*, 227 F.3d 732,

743 (6th Cir. 2000).

Second, the court must "inquire whether the individual's expectation of privacy is one

that a society is prepared to recognize as reasonable." *Bond v. United States*, 529 U.S. at 338

(internal citation omitted); *accord, Waller*, 426 F.3d at 844; *King*, 227 F.3d at 743.

On October 19, 2011, while police were questioning him, defendant denied that he was

an overnight guest at Kenyasha's apartment; however, during the suppression hearing, defendant

took the position that he was an overnight guest at Kenyasha's apartment, and the government

conceded on this point. Instead, the government argued that defendant did not have a reasonable

expectation of privacy at said apartment because he was trespassing when he was present at the apartment. The undersigned agrees. "By definition, trespassers cannot have an objectively reasonable expectation of privacy in the property on which they are trespassing." *United States v. Washington,* 573 F.3d 279, 284 (6th Cir. 2009) (citing *United States v. McRae,* 156 F.3d 708, 711 (6th Cir.1998)). In *McRae*, the defendant argued that he had a legitimate expectation of privacy in a vacant house by virtue of living in the house one week. In rejecting his claim, the court stated that the defendant "did not have a legitimate expectation of privacy by virtue of having stayed a week in the vacant premises that he did not own or rent." *Id.* at 711. *See also United States v. Allen*, 106 F.3d 695, 699 (6th Cir. 1997) (holding "[o]nce a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room….") (citing *United States v. Rahme,* 813 F.2d 31, 34 (2d Cir.1987)).

In the instant case, defendant had been told he was not allowed on the premises and that his presence there would be considered trespassing. In fact, he had been cited for trespassing at least once before October 19, 2011. Kenyasha also knew he was not allowed on CHA property. Accordingly, defendant had no reasonable expectation of privacy in the CHA apartment where Kenyasha lived, and, therefore, defendant has no valid Fourth Amendment challenge to Avery's entering the apartment and discovering the boxes of bullets. Fourth Amendment rights are personal rights which may not be vicariously asserted. *See e.g., United States v. Myers* , 102 F.3d 227, 231 (6th Cir. 1996) (defendant has no standing to challenge personal search of passengers in his car or admissibility of items found on them); *United States v. McNeal* , 955 F.2d 1067, 1072 (6th Cir.1992) (defendant's arrest was not tainted by alleged unlawful entry into another's residence where he had no constitutional right to challenge the legality of the entry and search).

*B. Statements Concerning the Boxes of Ammunition- Fifth Amendment Issues*

At the suppression hearing, the government clarified that it did not intend to introduce into evidence any statements made on October 19, 2011 by anyone other than the defendant and only those statements defendant made concerning the boxes of bullets *after* Avery gave him his *Miranda* rights. Defendant argues his statements concerning the boxes of ammunition should be suppressed because he was coerced into making them.

"Under the Fifth Amendment, a suspect is guaranteed the right to remain silent and the right to assistance of counsel during a custodial interrogation." *Toliver v. Sheets,* 594 F.3d 900, 916 (6th Cir. 2010) (citing *Miranda v. Arizona*, 384 U.S. 436, 4444-45 (1966)). The Fifth Amendment requires *Miranda* warnings be given where a person is subject to custodial interrogation. *Dickerson v. United States*, 530 U.S. 428 (2000); *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977). In addition, before a person's inculpatory can be used against him in a criminal case, the government must show that the person validly waived his Fifth Amendment rights. *Miranda*, 384 U.S. at 444; *Bird v. Brigano*, 295 Fed.Appx. 36, 37 (6th Cir. Sept. 30 2008) (unpublished).

"To be valid, waivers of Fifth Amendment rights must be 'voluntarily, knowingly and intelligently' made." *United States v. Montgomery*, 621 U.S. F.3d 568, 573 (6th Cir. 2010) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)); *see also Missouri v. Seibert*, 542 U.S. 600, 608-09 (2004) (The Fifth Amendment requires that a statement or confession be voluntarily, knowingly, and intelligently given to be admitted into evidence); *accord Dickerson*, 530 U.S. at 433. The government bears the burden to prove by a preponderance of the evidence that the confession or statements were voluntarily, knowingly, and intelligently given. *Seibert*, 542 U.S.

at 608 n. 1; *United States v. Ostrander*, 411 F.3d 684, 696 (6th Cir. 2005); *United States v. Wrice*, 954 F.2d 406, 410 (6th Cir. 1992).

Whether a confession was voluntarily given requires inquiry into "'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession." *Dickerson*, 530 U.S. at 434 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 223 (1973)). In making this inquiry, the court must consider the totality of the circumstances, "both the characteristics of the accused and the details of the interrogation." *Dickerso*n, 530 U.S. at 434 (internal citations omitted). "The determination depends upon a weighing of the circumstances of pressure against the power of resistance of the person confessing." *Dickerson*, 530 U.S. at 434 (brackets original) (internal citation omitted). "Coercive police activity is a necessary element for finding that a confession was involuntary." *Abela v. Martin*, 380 F.3d 915, 928 (6th Cir. 2004) (citing *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)). Promises of leniency and threats of prosecution may also be forms of coercion which overbear an accused's will and render a confession or statement involuntary. *United States v. Johnson*, 351 F.3d 254, 261 (6th Cir. 2003); *Wrice*, 954 F.2d at 411.

Defendant is an adult. He is familiar with the legal system and his rights. During the entire encounter with police, he was not threatened. No guns were drawn. Conversations were calm. He was given his *Miranda* rights immediately before he gave his statements regarding the ammunition. Avery did tell him that he would probably be arrested for trespassing, but Avery did not use that as a threat, *i.e.*, Avery did not tell defendant he would not or might not be arrested for trespassing if he talked to him about the boxes of ammunition. A threat of arrest may be coercive but only where the arrest could not have been "lawfully executed." *United States v. Johnson,* 351 F.3d 254, 263 (6th Cir. 2003) (where officers threatened to arrest the defendant's half-sister, the threat was not coercive because the officers had probable cause to

9

believe the half-sister had committed a crime.); *accord United States v. Sanchez-Diaz*, 2009 WL

3429754 *5 (E.D. Tenn. Sept. 10, 2009) ("A threat of arrest or prosecution may be coercive,

however, only where the threat could not have been "'lawfully executed.'")  In the instant case,

officers undoubtedly had probable cause to arrest defendant for trespassing.

Furthermore, nothing about Avery's demeanor, or the demeanor of any of the other

officers, was intimidating or aggressive.  In fact, Avery was remarkably pleasant, and defendant

did not appear to be upset or intimidated at all.  I must conclude, based on all the factors, that

defendant's will was not overborne by police conduct, and defendant freely and knowingly made

his statements regarding the boxes of ammunition.

## IV. Conclusion

For the reasons stated herein, I conclude defendant's Fourth Amendment rights were not

violated by Avery's entry into the apartment leased by Kenyasha because defendant had no

reasonable expectation of privacy in the apartment and that his statements regarding the boxes of

ammunition were given after defendant was *Mirandized* and after he knowingly and intelligently

waived his Fifth Amendment rights.  Accordingly, it is RECOMMENDED[1] defendant's motion

to suppress be DENIED.

> S /*William B. Mitchell Carter*
> UNITED STATES MAGISTRATE JUDGE

---

[1]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure.  Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985).  The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).